IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FAYE TURNER, Plenary Guardian of the )
Estate and Person of JOHN JOHNSON, a )
Disabled Person, )
)
)
Plaintiff, )
v. ) No. 09 C 4606
)
UNITED STATES OF AMERICA, LOYOLA )
UNIVERSITY MEDICAL CENTER, and )
LOYOLA UNIVERSITY HEALTH )
SYSTEM, )
)
Defendants.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Faye Turner is the brother and guardian of John Johnson, whose September 19, 2007, surgery at the Edward Hines, Jr., VA Hospital ("Hines" or "the VA") gave rise to this lawsuit. Plaintiff alleges that Dr. Hanna, an anesthesiologist employed by both the VA and Loyola,[1] and the lead researcher on a clinical study sponsored by both institutions, negligently performed her duties on Mr. Johnson's case, causing him permanent injury.[2] Now before me is Loyola's motion for summary judgment, which I grant for the reasons that follow.

---

[1] I refer to the Loyola defendants collectively as "Loyola."

[2] As I explained in my March 31, 2010, opinion in this case, the study, titled "Awake Tracheal Intubation in Anticipated Difficult Airways: Fastrich v. Flexible Bronchoscope," investigated two procedures for placing a breathing tube in a patient's windpipe while the patient is awake. Dr. Hanna invited Mr. Johnson to participate in the study, and he agreed. *See Turner v. U.S.*, 714 F. Supp. 2d 859, 861 (N.D. Ill. 2010).

Plaintiff explains her theory of Loyola's liability for Dr. Hanna's acts in these terms: "In the context of this case, the issue raised is whether Dr. Hanna was acting as actual or implied agent of Loyola at the time she provided care to Mr. Johnson at the VA hospital on September 19, 2007." Pl.'s Opp. at 4.[3] Among the arguments Loyola advances in support of its motion for summary judgment is that plaintiff has not raised a triable factual dispute over whether Dr. Hanna was indeed acting as Loyola's agent in her work on Mr. Johnson's surgery. I agree that she has not.

It is telling, at the outset, that the case on which plaintiff relies most heavily to support her theory of agency actually *rejected* that theory. In *Buckholtz v. MacNeal Hospital*, 785 N.E. 2d 162 (Ill. App. Ct. 2003), the Illinois Appellate Court held that the defendant hospital was entitled to judgment notwithstanding the jury's verdict for the plaintiff on the ground that the evidence at trial was insufficient to support a finding that the physicians in the case acted as the hospital's actual (implied) agent.[4] The court

---

[3]I take this statement to mean that plaintiff is proceeding only on the theory of actual authority, *see Petrovich v. Share Health Plan of Illinois, Inc.*, 719 N.E.2d 756, 770 (Ill.1999) ("Implied authority is actual authority, circumstantially proved"), as opposed to the theory of apparent authority, under which "a principal will be bound not only by the authority that it actually gives to another, but also by the authority that it appears to give." *Id*. at 765..

[4]The *Buckholtz* court noted, as a preliminary matter, that "[a]lthough the question of whether an agency relationship exists is a question of fact, a court may decide this issue as a matter of law if only one conclusion may be drawn from the undisputed facts." *Id*. at 170. The court went on to make clear that the

observed that "[t]he cardinal consideration for determining the existence of implied authority is whether the alleged agent retains the right to control the manner of doing the work," *id.*, then went on to find that this standard was not met by evidence that the physicians who treated the plaintiff "were in [the defendant]'s facilities and were wearing [the defendant]'s identification badges." *Id*. at 171.  The court explained that this evidence had to be viewed in context, and that "the presence of *some* evidence" favorable to plaintiff's theory of agency did not necessarily demonstrate the existence of a factual dispute sufficient to preclude judgment as a matter of law. *Id.* (Original emphasis) The court concluded that the evidence supporting plaintiff's agency theory was insignificant in light of undisputed evidence that the alleged agents were not employed by the defendant and had not received any wages from the defendant, on the one hand, and the lack of any affirmative evidence concerning the relationship between the alleged agents or their employer and the defendant, on the other.  *Id*.

Despite *Buckholtz*'s adverse conclusion, plaintiff puts the case at the center of her analysis (from which I can only infer that she was unable to marshal any authority actually adopting her agency theory on comparable facts), then insists that the evidence on which

---

burden of proving agency lies with the party seeking to impute
liability to the alleged principal--in this case, plaintiff.  *Id*.

-3-

she relies "reaches far beyond the 'paucity of circumstantial evidence'" the *Buckholtz* court found insufficient. Pl.'s Opp. at 4-5. But the evidence to which plaintiff points is only marginally more compelling than the evidence in *Buckholtz,* and it, too, is insufficient to raise a genuine factual dispute.

Plaintiff cites payroll forms and correspondence between Loyola and Dr. Hanna reflecting her employment at both Loyola and Hines (and ambiguous testimony by Dr. Hanna interpreting these documents)[5]; evidence that Loyola and Hines are "affiliated institutions" and provide each other with their respective "call schedules"; evidence that Dr. Hanna's employment with Loyola requires her to seek Loyola's approval before engaging in certain activities, including clinical research; the fact that both institutions sponsored the research study in which Mr. Johnson

---

[5]Plaintiff relies on Dr. Hanna's response to a question about the meaning of the designation, "prorated VA annual salary," "it means I get half the salary I got from Loyola." Pl.'s SOF, Exh. A at 242:18-19. It is not entirely clear what plaintiff believes this answer proves, but in any event, Dr. Hanna's ambiguous statement cannot reasonably be deemed to controvert her unequivocal testimony elsewhere that she was acting exclusively as an employee of Hines for the duration of her work on Mr. Johnson's surgery. *E.g.*, *id*. at 229:9-16 ("I am purely hired by Hines. I am an employee...I'm not there representing Loyola, I'm hired by the VA in the Anesthesia Department."); 244:4-7 ("I'm telling you I worked in the VA during the time of John Johnson's case. I worked for the VA. I had nothing to do with Loyola."); 238:10-19 ("Q: Does Loyola [] pay you a full-time salary? A: half-time. Q: And the other half is paid by Hines? A: The other half - it's a completely different package, actually. It's a different package altogether. So it's not half and half. It's half of the Loyola full-time salary and half of the VA full-time salary.").

agreed to participate; and Dr. Hanna's acknowledgment that she "sometimes" wore her Loyola lab coat while working at Hines. Even if this evidence were not stacked against undisputed, affirmative evidence that Dr. Hanna performed work on Mr. Johnson's case exclusively as an agent of Hines, not of Loyola,[6] plaintiff's cited evidence is not of the sort that could lead a reasonable jury to conclude that Loyola controlled Dr. Hanna's "manner of doing the work" she performed during Mr. Johnson's surgery. *Buckholtz*, 785 N.E.2d at 170. Indeed, plaintiff's putative denial of Loyola's assertion that "Loyola has no control over Dr. Hanna's care and treatment of patients at the VA," rests entirely on evidence that Loyola "prepar[es] and control[s] the call schedule so that physicians providing services to the affiliated institutions would be available as necessary to cover the needs of both institutions." Pl.'s Resp. to Loyola's SOF, ¶ 21. But establishing a call schedule to determine who works where and when is a far cry from controlling the *manner* in which physicians employed by either institution

---

[6]This evidence includes undisputed evidence that Dr. Hanna's work as an anesthesiologist at Hines was supervised by Dr. Raj Uppal, the Chief of Anesthesiology at the VA, and that her work at the VA is subject to the VA's policies and procedures, and that Loyola does not have any policies, procedures, or standards in place regarding the treatment of patients at Hines. Moreover, it is undisputed that Dr. Hanna submitted separate research protocols to the respective Institutional Review Boards of the two institutions to obtain permission to conduct the clinical research project in which Mr. Johnson participated, and that Loyola had no role in the approval of the protocol Dr. Hanna submitted to the VA.

perform their work.  Quite plainly, none of the evidence plaintiff cites suggests that Loyola had any influence over this "cardinal consideration" with respect to Dr. Hanna's participation in Mr. Johnson's care.

Because I conclude that plaintiff has not raised a genuine dispute as to whether Dr. Hanna acted as Loyola's agent in her work on Mr. Johnson's case, I need not analyze Loyola's remaining arguments in support of its motion for summary judgment.  The motion is granted

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: August_8, 2011