IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FAYE TURNER, Plenary Guardian of the
Estate and Person of JOHN JOHNSON,
a Disabled Person

                    Plaintiff,

v.

United States of America,

                    Defendant.

No. 09 C 4606

Judge Tharp

## STIPULATION FOR COMPROMISE SETTLEMENT AND RELEASE FEDERAL TORT CLAIMS ACT CLAIMS PURSUANT TO 28 U.S.C. § 2677

It is hereby stipulated by and between the Plaintiff, Faye Turner, Individually and as Plenary Guardian of the Estate and Person of John Johnson, a Disabled Person, and the Defendant, United States of America, including its agents, servants, and employees (hereinafter "United States"), collectively, "the parties," by and through their respective attorneys, as follows:

1. The parties to this Stipulation For Compromise Settlement And Release (hereinafter "Stipulation") do hereby agree to settle and compromise each and every claim of any kind, whether known or unknown, including claims for wrongful death, arising directly or indirectly from the acts or omissions that gave rise to the above-captioned action under the terms and conditions set forth in this Stipulation.

2. This Stipulation is not, is in no way intended to be, and should not be construed as, an admission of liability or fault on the part of the United States, its agents, servants, or employees,

Page 1

Turner Stipulation for (Structured) Compromise
Settlement and Release (June 17, 2013)

and it is specifically denied that they are liable to the Plaintiff. This settlement is entered into by all parties for the purpose of compromising disputed claims under the Federal Tort Claims Act and avoiding the expenses and risks of further litigation.

3. In consideration for the Plaintiff's agreement to accept the terms and conditions of this settlement, the United States agrees to pay the cash sums set forth below in Paragraph 3.a., to purchase the annuity contract described below in Paragraph 3.b, and to establish the Irrevocable Reversionary Inter Vivos Grantor Reversionary Medical Care Trust for the Benefit of John I. Johnson (hereinafter "Reversionary Trust") described below in Paragraph 3.c.

a. Within three business days after counsel for the United States receives (1) this Stipulation and the Reversionary Trust signed by all parties to said documents; (2) the Social Security numbers or tax identification numbers of Plaintiff and her attorney; (3) a court Order approving the settlement on behalf of John Johnson, a disabled person; and (4) an authorization by the Attorney General or his designee to conclude negotiations and to consummate the settlement, counsel for the United States will send a formal request to the United States Department of the Treasury requesting that the sum of Twelve Million Dollars ($12,000,000.00) (hereinafter "Settlement Amount") be expeditiously sent by electronic funds transfer (EFT) to the settlement trust account of Brant Hickey & Associates, Inc. (hereinafter "Brant Hickey").

Within five business days after Brant Hickey has received from Plaintiff's counsel the birth certificate and social security card of John Johnson, Brant Hickey agrees to distribute the Settlement Amount, as provided below in subparagraphs 3.a.(1) and 3.a.(2).

(1) A check in the amount of Five Million Five Hundred Thousand Dollars ($5,000,000.00) (hereinafter "Upfront Cash") made payable to Faye Turner, Plenary Guardian of the Estate and Person of John Johnson, a disabled person, and delivered to the United States Attorney's Office for the Northern District of Illinois (Eastern Division) to hold until Plaintiff's attorney has filed a motion with the United States District Court to dismiss this action in its entirety with prejudice, with each party to bear its own costs, expenses, and fees.

With respect to the payment of the Upfront Cash, Plaintiff stipulates and agrees that the United States will not sign an annuity application form, a uniform qualified settlement form, or any equivalent such forms, and that the United States will not pay the Upfront Cash into a qualified settlement fund or an equivalent fund or account. Plaintiff further stipulates and agrees that she, her attorney(s), any Guardian Ad Litem, and her representatives (including any structured settlement annuity broker, regardless of whether said broker was retained by her or by someone else, either before, during, or after the settlement) will not attempt to structure the Upfront Cash in any way, form, or manner, including by placing any of the Upfront Cash into any qualified settlement fund or its equivalent. However, nothing in this Paragraph 3.a.(1) precludes the Plaintiff from purchasing standard, non-structured settlement annuities after the Plaintiff has cashed the Upfront Cash check, but she agrees that she and her representatives will not represent to any person, entity, or agency that they are purchasing structured settlement annuities and they agree they will not attempt to purchase such structured settlement annuities.

Plaintiff agrees to endorse the Upfront Cash check over to her attorney to be deposited in their attorney's client trust account to facilitate the disbursement of the Upfront Cash as authorized by the approving court.

The parties agree that any attorneys' fees owed by the Plaintiff in the above-referenced action against the United States shall not exceed twenty-five percent (25%) of the Settlement Amount. 28 U.S.C. § 2678. The parties further agree that any such attorneys' fees, along with Plaintiff's costs and expenses of this action against the United States and any costs, expenses, and fees (including Guardian Ad Litem fees) associated with obtaining court approval of this settlement on behalf of John Johnson, a disabled person, shall be paid out of the Upfront Cash and not in addition thereto.

The Plaintiff stipulates and agrees that she is legally responsible for any and all past, present, and future liens and past, present, and future claims for payment or reimbursement, including any past, present, and future liens or claims for payment or reimbursement by any individual or entity, including an insurance company, Medicaid, and Medicare arising from the injuries that are the subject matter of this action. The Plaintiff stipulates and agrees that she will satisfy or resolve any and all such past, present, and future liens or claims for payment or reimbursement asserted by any such individual or entity. The Plaintiff and her attorney represent that, as of the date they sign this Stipulation, they have made a diligent search and effort to determine the identity of any individual or entity that has or may have a lien or a claim for payment or reimbursement arising from the injuries that are the subject matter of this action. The Plaintiff agrees that, no later than thirty (30) days from the date any past, present, or future lien or claim for

payment or reimbursement is paid or resolved by the Plaintiff, they will provide to the United States evidence that said lien or claim has been satisfied or resolved and that said lienholder or Plaintiff has waived and released such lien or claim. The evidence required by the terms of this Paragraph may be satisfied by a letter from Plaintiff's attorney representing to counsel for the United States that such lien or claim has been satisfied or resolved and that the lienholder or Plaintiff has waived and released such lien and claim.

(2) For the funding of the Reversionary Trust described below in Paragraph 3.c., the sum of Seven Million Dollars ($7,000,000.00) (hereinafter "Trust Funding Amount") to be distributed by Brant Hickey as follows:

(a) Pay to an annuity company, rated at least A by A.M. Best rating service, the sum of Six Million Dollars ($6,000,000.00) to purchase the installment refund annuity contract described in paragraph 3.b. below. In the event the annuity contract cannot be purchased from a single company, the sum of Six Million Dollars ($6,000,000.00) shall be split between two or more companies.

(b) Pay to the Reversionary Trust, the sum of One Million Dollars ($1,000,000.00).

b. Subject to the following terms and conditions, the United States will purchase an installment refund annuity contract to pay the Reversionary Trust the sum of $40,079.46 per month, increasing at three percent (3%) compounded annually after the first year of payments, beginning one month from the date of purchase and continuing for the life of John Johnson (DOB as provided by Plaintiffs: April 28, 1952), with an installment refund period. In the event the cost

of the annuity contract has either increased or decreased by the date of purchase, the monthly annuity payments set forth above shall be adjusted downward or upward to ensure that the premium cost of the annuity contract is equal to Six Million Dollars ($6,000,000.00) and not more or less than that amount.

    (2)  Upon the death of John Johnson, any installment refund period payments remaining shall be paid to the United States Treasury fbo John Johnson and sent to the Torts Branch, Civil Division, United States Department of Justice, P.O. Box 888, Benjamin Franklin Station, Washington D.C. 20044, or upon written notice, any subsequent change of address.

    (3)  The annuity contract being purchased pursuant to this Paragraph 3.b. will be owned solely and exclusively by the United States and will be purchased through BRANT HICKEY as specified above in Paragraph 3.a. The parties stipulate and agree that the United States' only obligation with respect to an annuity contract and any annuity payments therefrom is to purchase said contract, and they further agree that the United States does not guarantee or insure any of the annuity payments. The parties further stipulate and agree that the United States is released from any and all obligations with respect to an annuity contract and annuity payments upon the purchase of said contract.

    (4)  The parties stipulate and agree that the annuity company that issues an annuity contract shall, at all times, have the sole obligation for making all annuity payments. The obligation of the annuity company to make each annuity payment shall be discharged upon the mailing of a valid check, or executing an electronic funds transfer, in the amount of such payment to the address, or account, designated by the party to whom the payment is required to be made

under this Stipulation. Payments lost or delayed through no fault of the annuity company shall be promptly replaced by the annuity company, but the annuity company is not liable for interest during the interim.

(5) The parties stipulate and agree that the annuity payments cannot be assigned, accelerated, deferred, increased, or decreased by the parties, that no part of any annuity payments called for herein, nor any assets of the United States or the annuity company, are subject to execution or any legal process for any obligation in any manner, and that the Plaintiffs shall not have the power or right to sell, assign, mortgage, encumber, or anticipate said annuity payments, or any part thereof, by assignment or otherwise.

(6) Plaintiffs and Plaintiffs' guardians, heirs, executors, administrators, and assigns do hereby agree to maintain with the annuity company and the United States a current mailing address, to notify the annuity company and the United States of the death of John Johnson within ten (10) days of death, and to provide to the annuity company and the United States a certified death certificate within thirty (30) days of death.

c. The United States will establish, as the Grantor, the Reversionary Trust on the following terms and conditions:

(1) The parties agree to the terms, conditions, and requirements of the Reversionary Trust, a copy of which is attached hereto and incorporated by reference.

(2) Plaintiffs and their successors, assigns, guardians, and guardians ad litem, if any, agree that John Johnson (hereinafter "John Johnson" or "Trust Beneficiary") and anyone acting on behalf of the Trust Beneficiary has the duty and responsibility to cooperate with the Administrator

and Trustee of the Trust to the extent the Administrator and the Trustee determine that the Beneficiary's cooperation is necessary or useful for them to carry out their respective duties and responsibilities. Plaintiffs and Plaintiffs' successors, assigns, guardians, and guardians ad litem, if any, further agree that the duties and responsibilities of the Trust Beneficiary and anyone acting on behalf of the Trust Beneficiary include, but shall not be limited to, the following: providing signatures, authorizations, documentation, and information deemed necessary by the trustee and administrator of the Reversionary Trust for purposes of carrying out of the terms of the Reversionary Trust; submitting requests for payment of allowable benefits, and supporting documentation and authorizations, as required by the Reversionary Trust; identifying other sources of payments or benefits; applying to other sources of payments or benefits for coverage; assisting and cooperating with the trustee and administrator in obtaining payments or reimbursement from other sources of payments or benefits; and transmitting to the trust estate any amount received by (or on behalf of the Trust Beneficiary) from another source of payments or benefits in reimbursement for, or payment of, an expense that has been paid or will be paid from the trust estate. The parties agree that the failure of the Trust Beneficiary, or anyone acting on behalf of the Trust Beneficiary, to comply with these duties and responsibilities may result in the denial, in whole or part, of payments from the trust estate, depending on the terms of the Reversionary Trust.

(3) Plaintiffs and their successors, assigns, guardians, and guardians ad litem, if any, agree to maintain with the administrator, the trustee, and the United States a current mailing address for the Trust Beneficiary, to notify the administrator, the trustee, and the United States of

any event upon which the right of payments from the trust estate may depend, including the death of the Trust Beneficiary, within ten (10) days of the date of such event, and to provide the administrator, the trustee, and the United States with a certified death certificate within thirty (30) days of the death of the Trust Beneficiary, John Johnson.

(4) Upon the death of John Johnson, the trustee shall, to the extent authorized by the terms of said Reversionary Trust, pay allowable charges, expenses, and benefits, and liquidate and distribute the remaining trust estate to the United States by check made payable to the United States Treasury fbo John Johnson and sent to the Torts Branch, Civil Division, United States Department of Justice, P.O. Box 888, Benjamin Franklin Station, Washington D.C. 20044, or, upon written notice, any subsequent change of address.

4. Plaintiff and Plaintiff's heirs, executors, administrators, and assigns hereby accept the compromise settlement, including the terms and conditions of this Stipulation and the payment of the Settlement Amount, in full settlement, satisfaction, and release of any and all claims, demands, rights, and causes of action of any kind, whether known or unknown, including any future claims for survival or wrongful death, and any claims for fees, interest, costs, and expenses, arising from, and by reason of, any and all known and unknown, foreseen and unforeseen, bodily and personal injuries, including the death of John Johnson, or damage to property, and the consequences thereof, which the Plaintiff or her heirs, executors, administrators, or assigns may have or hereafter acquire against the United States on account of the subject matter of that gave rise to the above-captioned action.

Page 9

Turner Stipulation for (Structured) Compromise
Settlement and Release (June 17, 2013)

Plaintiff and Plaintiff's heirs, executors, administrators, and assigns further agree to reimburse, indemnify, and hold harmless the United States from and against any and all claims, causes of action, liens, rights, or subrogated or contribution interests (whether such claims, causes of action, liens, rights, subrogated interests, or contribution interests sound in tort, contract, or statute) incident to, or resulting or arising from, the acts or omissions that gave rise to the above-captioned action, including claims or causes of action for wrongful death.

5. This compromise settlement is specifically subject to each of the following conditions:

a. The Attorney General or the Attorney General's designee must approve the terms and conditions of the settlement and authorize the attorney representing the United States to consummate a settlement for the amount and upon the terms and conditions agreed upon by the parties, as set forth in this Stipulation and the Reversionary Trust.

b. The parties must agree in writing to the terms, conditions, and requirements of this Stipulation and the Reversionary Trust. The parties stipulate and agree that the Stipulation and the compromise settlement are null and void in the event the parties cannot agree on the terms, conditions, and requirements of this Stipulation and the Reversionary Trust. The terms, conditions, and requirements of this Stipulation and the Reversionary Trust are not severable and the failure to agree, fulfill, or comply with any term, condition, or requirement renders the entire Stipulation and the compromise settlement null and void. The parties must agree to the terms, conditions, and requirements of this Stipulation and the Reversionary before the United States Attorney's Office will seek settlement authority from the Attorney General or the Attorney General's designee.

c. John Johnson must be alive at the time the annuity contract described above in Paragraph 3.b. is purchased and at the time the Reversionary Trust described in Paragraph 3.c. is deemed established, as defined in Article V of the Reversionary Trust. In the event of the death of John Johnson prior to the date the annuity contract is purchased or the date the Reversionary Trust is deemed established, the entire Stipulation and compromise settlement are null and void.

d. Plaintiff must obtain, at their expense, approval of the settlement by a court of competent jurisdiction on behalf of John Johnson, a disabled person. The terms of any such Order, which shall be provided by the United States, are a condition of this settlement. Plaintiff agrees to obtain such approval in a timely manner: time being of the essence. Plaintiff further agrees that the United States may void this settlement at its option in the event such approval is not obtained in a timely manner. In the event Plaintiff fails to obtain such court approval, the entire Stipulation and the compromise settlement are null and void. The Plaintiff must obtain such court Order before the United States Attorney's Office will seek settlement authority from the Attorney General or the Attorney General's designee.

e. In the event there are any currently known liens or any known claims for payment or reimbursement, including any liens or claims by Medicaid or Medicare, arising out of the subject matter that gave rise to the above-captioned action, whether disputed as legally valid or not, Plaintiff must obtain a release and waiver from any State, private entity, or private individual who claims to have such lien or claim. For purposes of this Stipulation, such lien or claim includes but is not limited to, a claim or cause of action for reimbursement for any payments made to or on behalf of the John Johnson, a disabled person, or a claim or cause of action for reimbursement for

Page 11

Turner Stipulation for (Structured) Compromise
Settlement and Release (June 17, 2013)

any goods or services provided or furnished to or on behalf of John Johnson, a disabled person. This condition is for the benefit of the United States exclusively. The United States will provide the form of Release and Waiver, or any changes to the form required by the United States, to be used by the Plaintiff in obtaining a Release and Waiver from any State, private entity, or private individual who claims to have such lien or claim. Before the United States Attorney's Office will seek settlement authority from the Attorney General or the Attorney General's designee, the Plaintiff must provide the United States with either (i) all such releases and waivers required by this Paragraph 5.e., or (ii) a written representation by Plaintiff's attorney stating that, after a diligent search of counsel's law firms' records and files, including expert and consultant reports, and of the Plaintiff's records and files, no such liens or claims are currently known to exist.

6. The parties agree that this Stipulation and the Reversionary Trust, including all the terms and conditions of this compromise settlement and any additional agreements relating thereto, may be made public in their entirety, and the Plaintiff expressly consents to such release and disclosure pursuant to 5 U.S.C. § 552a(b).

7. It is contemplated that this Stipulation may be executed in several counterparts, with a separate signature page for each party. All such counterparts and signature pages, together, shall be deemed to be one document.

WHEREAS, the parties accept the terms of this Stipulation for Compromise Settlement and Release as of the dates written below:

Executed this ___10th___ day of ___September___, 2013.

BY: ___/s/ Eric Pruitt___
Eric Pruitt
Attorney for Defendant,
United States of America

Page 13

Executed this 05th day of August, 2013.
WINTERS SALZETTA & O'BRIEN LLC

BY: _____
John Winters, Esq.
Winters Salzetta & O'Brien
Attorneys for Plaintiff

Page 14

Turner Stipulation for (Structured) Compromise
Settlement and Release (June 17, 2013)

Executed this 23RD day of August, 2013.
JOHN JOHNSON

BY: _____
Faye Turner, Plenary Guardian of the Estate and
Person of John Johnson, a Disabled Person

Executed this 23rd day of August, 2013.
FAYE TURNER, INDIVIDUALLY

_____
Faye Turner, Individually

Executed this  6 ᵗʰ  day of  Sept. , 2013.
BRANT HICKEY & ASSOCIATES, INC.

BY: _____
Henry W. Barkhausen
Brant Hickey & Associates, Inc.

Page 17

Turner Stipulation for (Structured) Compromise
Settlement and Release (June 17, 2013)